Livingston, ,/,
 

 delivered the opinion of the Court as follows: '
 

 This is a joint action of debt o.n a bond dated the 9th of January, 1801, in the penalty of 20,000 dollars.
 

 . The condition of the bond is as follows : Whpreas the above jmund A.quila Giles hath been appointed the marshal in and for the New York district, in pursuance of an act, entitled “an act to establish the judicial Courts of the United States,” nw, the condition of the preceding obligation is such, that if the said A. G. shall, bv himself and his deputies, faithfully execute all lawful precepts directed to. the marshal of the said district under the authority of the United States and true returns make, and in all things well and truly and without malice or partiality perform the duties of the office of marshal in and for the said district of New .York
 
 daring his continuance in the said office,
 
 and take only his lawful fees, then the obligation to be void, &c.
 

 General performance is pleaded by the Defendants, to which a replication is filed assigning six breaches, to all ef which there was a rejoinder, sur-rejoindér and issue,.
 

 
 *231
 
 On the issue joined on the first breach the special verdiet finds, that on the 20th of January, 1800, Ihe said Writ of
 
 rend. exp. andfi.fa.
 
 was delivered to Giles, who, before he proceeded to execute it, was authorized by the offic ers of the treasury to sell the land of Lamb, under said writ, for one fourth part of the purchase money 'in cash, one fourth part pay able in two years f, om the time of sale, one fourth part in three years, and the other fourth part in four years, with interest from the time of sale, to be secured by bonds and mortgages payable, to Giles as marshal, or to the marshal of the district for the time being, to and for the use of the United States. That on the, 17th of December, 1800, John Steele, being comptroller of the treasury, did instruct and order1 Giles to pay into the office of discount and deposit of t1 e bank of the United States in NeV York, to the credit of the treasurer of the United States, all the monies which might be levied from the property of Lamb, by virtue oí the said writ,of
 
 rend. exp. ¡xndf. fa.
 
 That under these instructions Giles proceeded to sell the lands of John Lamb* the sales of which commenced on the 26th of November, 1800, and were continued until the 23d of December in the same year. That during the sales and afterwards, and before the execution of the bond by the defendants, Giles received from some of the purchasers several sums amounting to S,71'3 dollars and 98 cents, and no. more, which sums were paid as the fourth of the purchase money of the lands bought by them. , That Giles has never brought' ibto Court, or paid into the bank either of the s'áid sumís, o'f. 50 dollars, which was,received on the' 20th of JánuáRw 1800, on a sale, by Giles, of the chattels of.L:\fflF, or-of 3,713 dollars and 98 cents, and that he never was.re* quired so to do by any order of the District Court That while Giles was marshal as aforesaid, a writ of
 
 capias ad satisfacievdum
 
 was issued out of said Court and delivered to him against Elias Iiicks, on a judgment recovered by the-United States, on which was indorsed a direction to Giles to levy the sum of 33,156'doL lars and 38 cents, besides marshal’s fees and poundage J that Hicks was arrested by Giles and in custody on said writ until, discharged therefrom by the secretary of'the; treasury/ that' the poundage fees of Giles thereon, if any Were due, have not been-paid to him by any oné, and that they amount* if due at all, to ,419 dollars and 57
 
 *232
 
 cents.. That the United States became indebted to Giles, while marshal as aforesaid, in the sum of 8,133 dollars and 96 cents, for his fees and serv ices, in taking the se.cond census in his .district and for monies paid to his as-in taking the said ¡census, pursuant to the act in such case made and provided, which sums amount to 8,553 dollars and 53 cents,-in part payment of which Giles retains the two sums of 50 dollars, and of, 3,713 dollars and 98 cents. But whether in law foe. con verted them to his own use contrary to the form arid effect of the condition of the said bond, the. jurors pray the advice of the Court. If the Court shall think that it was such a conversion the jurors assess damages on this breach at. 3,763 dollars and 98 cents, But if the Court shall be of opinion that such retaining was no conversion then the jury fsay that
 
 hr
 
 did not'eonvert the .same
 
 to his
 
 use.
 

 2. The second breachas signed, is,-that Giles having, on the. 17th of December, 1800, sold other lands of Lamb under the writ aforesaid for the further sum of 60,00® dollars, received ,the said sum on the 20th of January, 1801, (which was after the execution of the bond,) aud converted and disposed of the samé to his own use.
 

 On the issue joined on this breach, the jury find that' Giles, having, made'the sales-as aforesaid, and under the instructions and orders aforesaid, received from the pug-chasers, after.the 9th of January, 1801,' aiid before the 27th of March, 1801, (when he went out of office) the sum of 1,683 dollars and 52 cents; and after that day the sum of 17,191 dollars aiid 58 cents, amounting in the whole to 18,875 dollars and 10 cents, which sums Svere paid by the purchasers, as the cash payment which was to'be made by them for the land so.purcliascd (which sales took-place between the 26th of November, and the 23d of December, 1S00.) That.the poundage apd charges due to and paid by Giles, arid
 
 legally chargeable
 
 against theproceeds of these sales; amounted to 1,332 dollars and 85 cents which leaves in the hands of Giles the net sum of' i7,542..dol!ars and 25 cents, of the monies received by him after the 9th of . January, 1801. That on the 13th of April, 1803, lie paid to Edward Livingston, who was district attqruey, tlie sum of 6,238 dollars and 35 cents, ’which was-receiptcd fog on the said writ of execution. That it was then and yet is the usage and prac
 
 *233
 
 fice within the said district for the marshal to pay to the district attorney all monies levied by executions issued hy file said attorney, in suits in which the United States are Plaintiffs, That this pay ment was made by and with the approbation of the comptroller of the treasury, and that Giles has never in any other way paid the said last mentioned sum to the United States, or brought it into Court in any Other way, than by paying it as aforesaid, to the district attorney. That as to another part of the said sum of 17,542 dollars and 25 cents, to wit, the sum of 4,479 dollars and 68 cents, Giles retains the same towards satisfaction of an equal sum due to him as aforesaid from the United States. That the residue of the said sum, to wit, the sum of 6,824 dollars and 22 cents, Giles retains to this day. B¿:t they pray the advice of the Court whether Giles converted to his own use, contrary to the condition of the said bond, the said several sums of 6,238 dollars and 35 cents, 4,479 dollars and 68 cents, and 6,824 dollars and 22 cents.
 

 1. If he converted all of the said sums contrary, &c. then they assess damages at 20,613 dollars and 12 cents.
 

 2. If he did not convert the said sum of 6.238 dollars and 35 cents, paid to Livingston, but converted the other two sums, then they assess damages at 14,374 dollars and 77 cents.
 

 3. If he did not convert the two first sums, to wit, the sum of 6,238 dollars and 35 cents, and 4,479 dollars and 68 cents, but did convert the sum of 6,824 dollars and 22 cents, to his own use* then they assess damages at 9,895 dollars and 9 cents, ’
 

 4. If Giles did not convert to bis own use the sum of 6,824 dollars and 22 cents, but did convert the. other two sums, then they assess damages at 10,718 doiiars and 3 cents.
 

 5. If Giles did not cojnjert to his own use the said sum of 4,479 dollars and 681 cents, but did so convert the other two sums, they assess damages at 16,133 dollars and 44 cents.
 

 6. If Giles did not convert to his own use the two sums
 
 *234
 
 of 4,479 dollars and 68 cents, and 6,824 dollars and 22 cents, but did so convert the other sum (if 6,238 dollars and 35 cents, then the damages are assessed at 6,238 dollars and 35 cents.
 

 7. If Giles did not so convert the two sums of 6,238 dollars and
 
 SB
 
 cents, and 6,824 dollars and 22 cents, but did so convert the other sums of4,479 and 68 cents, they then find damages to the amount of 4,479 dollars and 68 cents.
 

 8. If, in the opinion of the Court, Giles converted neither of those sum1, to his own use, contrary to the effect of the said condition, then the jury find that he did not so convert either of them.
 

 On the issue joined on the fourth breach, the following facts appear on the special verdict. That on the 1st of February, 1801, Giles had in his hands, as marshal, 14 bonds, described in assigning the fourth breach, belonging to the Plaintiffs. That Giles continued marshal until I he. 27th of March, 1801, when ho was duly removed and dismissed from office, and John S.wartwout on the same day appointed marshal of the said district in his place, who continued marshal until the commencement of this .suit. That the said bonds continued in the hands of Giles until the. 3d of January, 1803, when they were delivered by him to Edward Livingston who was then district attorney, by and with the assent and approbation of the comptroller of the treasury. TliaCon the 12th of January, 1803, Gabriel Duval being comptroller of the treasury,’ as such did instruct, order and direct. Giles as late, marshall to deliver immediately the said 14 bonds to the said John Swartwout his successor* in office, .which lie did not do. If the Court shall think this was a conversion of these bonds, the jury assess.damages at 5,255 dollars and 73. If the Court think otherwise-the jury find it to be no conversion.
 

 On the subject ofthe fifth breach,’it is found that Giles on the 1st of September. 1800, received as marshal 309 dollars and 87 cents, on an execution issued against one Richard Capes at the suit of the Plaintiffs, which he retains towards satis faction'of an equal sum due from them to him.* If this be deemed a conversion by the Court,
 
 *235
 
 the jury assess damages at 309 dollars and 87 cents, But if the Court shall not think so, then the jury, on this breach, find for the Defendants.
 

 It is certified that the Circuit Court, were divided in opinion on the following points arising on this record.
 

 1. Whether judgment should be given for the Plaintiffs or for the Defendants as to the sum of 3,763 dollars and 98 cents, being the damages assessed upon the first breach assigned.
 

 2.
 
 The like question as to the sum of 20,613 dollars and 12 cents, being the first sum assessed as conditional damages, on the second breach.
 

 3. The same question as to the sum of 14,374 dollars and 77 cents, being the second sum conditionally assessed on the second breach.
 

 4. The like as to the sum of 9,895 dollars and 99 cents, being the third sum assessed conditionally on the second breach.
 

 5. The like as to the sum of 10,718 dollars and 3 cents, being the fourth sum assessed on the second breach,
 

 6. The like question as to the sum of 16,133 dollars and 44 cents, being the fifth .sum assessed on the second breach.
 

 7. The like question as to the sum of 6,238 dollars and 35 cents, being the sixth sum assessed on the second breach.
 

 8. The like question as to the sum of 4,479 dollars and 68 cents, being the seventh sum assessed on the second breach,
 

 9. The like question as to the sum of 5,255. dollars and 73 cents, being thé damages assessed on the fourth breach.
 

 10. ;The like question as to the sum of 309 dollars
 
 *236
 
 and 87 cents, being the damages assessed on the fifth breach. ■
 

 The first point on which the direction of this Court asked, will require a decision of the following questions.
 

 1, Had Giles a right to retain out of the public monies in his hands any sums which might be due to him for his services or for advances made by him ás marshal ?
 

 2. Are the Defendants liable, under the condition of their bond, for the two sums of SO dollars, and of 3,713 dollars and 98 cents, received by Giles, the first sum on the 20th of January, 1800, and the other on some day prior to the 9th of January, 1801, which is the date of. their bond ?
 

 The act of congi’ess providing for the settlement of accounts between the United States and the receivers of public monies, is so explicit as to preclude evei’y difficulty in deciding on the first question. The third section of the law provides, that where a suit shall be instituted against any pci’son indebted to the United States, the Court shall grant judgment at the return term, on motion, unless the Defendant shall in open Court make oath or affirmation that he is equitably entitled to credits, which .had been, previous to the commencement of the suit, submitted to the consideration of the accounting officers of the treasury, and rejected, specifying each particular claim so rejected in .the affidavit. The next section declares that in suits between the United Stales and individuals; no claim for a credit shall be admitted upon trial but such as shall appear to have been submitted to the accounting officers of the treasury for their examination and by them disallowed,' unh'ss it shall appear that the Defendant at the time of trial is in possession of vouchers not before in his power to procure, and that lie was prevented from exhibiting a claim for such credit
 
 by
 
 absence from the United States, or by some unavoidable accident.
 

 It is clear then that if this had been an action against Giles for monies received by him as marshal, he could not
 
 *237
 
 have availed himself of any credit against the public, however well founded the claim might be, unless lie had previously submitted his title to sucli a credit to the accounting officers of the treasury and they had rejected the earnor unless he bad been prevented from so doing by one of the accidents mentioned in the law.
 

 On this subject the special verdict, on the issue joined on the sixth.breach, finds that Giles did not render to the auditor of the treasury all his accounts and vouchers for the expenditure of monies received by him as marshal as aforesaid.
 

 If then in a suit against Giles himself, a claim for these credits, under existing circumstances, could not be sustained, neither can it in an qction on this.bond, without permitting the -Defendants to do indirectly what the marshal could not have done directly, and in this way avail themselves of what the law seems to regard as a default,, or at least a negligence on the part of their principal.
 

 - We are next to consider whether the Defendants-are liable for the sum of 50 dollars, and the sum of 3,713 dollars and 98 cents, received by Giles. The first sum was received on the 20ih of January, 1800, on
 
 the Ji. fa.
 
 and
 
 vend. exp.
 
 issued against the estate of John Lamb; and the other was received on the samé writ after the 27th of November, 1S00, but before the date of the bond upon which the action is brought.
 

 It is contended by the Defendants that the retaining of monies which were received by Giles anterior to the elate of .the bond, cannot be considered a conversion by him within the terms of its condition j while the Plaintiffs on the contrary, maintain that as those sums were in his hands at the time of its execution and have not been paid over to this day, bis official delinquency is made out within the meaning of this instrument, and the responsibility of the Defendants thereby established.
 

 On this point two of the judges think that the conversion of these sums by Giles was complete by his not paying them into the bank, agreably to the directions of the, comptroller of the, treasury under which. he acted and that this having taken place prior to the execution of the
 
 *238
 
 bowl'the Defendants are not liable therefor within the-terms of its condition which are entirely prospective. Two other members of the Court are of opinion that no demand appearing on the record to have been made on marshal for these sums, either by rule of Court or otherwise, no conversion of them is.made out; and ihat therefore the Defendants are no’t liable. The other two judges think that although these two sums were received before the date of the bond, yet as they remained in the hands of the marshal, afterwards, and have not been paid over to this day, the Defendants are accountable for them.
 

 J udgment must therefore he rendered for tlie Defendants as to the suin of 5,763 dollars and 98 cents, being the damages assessed upon the first breach assigned..
 

 The next question, on which the Court belowjwas divided, related to the sum of 20,613 dollars and 12 cents, being the first sum assessed as conditional damages upon the second breach.
 

 By recurring to the special verdict it appears that Giles having had a
 
 fieri facias
 
 put into his hands on the 20th of January, 1800, against the real estate of John Lamb, was directed by the officers of the treasury, to make sales of it for one fourth of the purchase money in cash, and for the other three fourths on certain credits and securities specified in said instructions. These sales commenced on the 26th of November, 1800, and continued until the 23d of December, following.
 

 After the 9th of Jánua.jy, 1801, and before he went out of office:, which was the 27th of March, following, Giles received of the purchasers of Lamb's'estáte, 1,683 dollars and-52 cents, am! after that day the sum of 17,191 dollars ánd 58 cents, amounting in the whole to 18,875 dollars and 10 cents. Deducting the poundage and charges which the special verdict finds to he
 
 legally chargeable
 
 against this sum, there was left in Giles hands the net sum of 17,542 dollars and 25 cents, of the monies received by him afterthe 9th of January, 1801. On the 13th of April, 1803, he paid to E. Livingston who was district attorney, with the assent and approbation of the
 
 *239
 
 comptroller of the treasury, the sum of 6,238 dollars and 35 cents.
 

 Before we examine into the deductions claimed by the, Defendants against the sums received by Giles for cash payments, it will be necessary to settle for what portion of these sums they are chargeable under the condition of their bond.
 

 Of these' sums a majority of the Court think they are liable for the sum of 1,6 S3 dollars and 52 cents, winch was receivéd between its execution and the marshal's dismission from office.
 

 Arc they also responsible for the sum of 17,191 dollars and 50 cents, which was received by Giles after another marshal came into office ?
 

 The bond, on which this action is brought having been, given for the faithful performance of the duties of Giles aS marshal,
 
 during Ids continuance in office,
 
 two of the judges are of opinion that his sureties are not liable for the conversion’of the last mentioued sum which took place after lie was out of office by not paying it as directed by the comptroller of the treasury. Two of the judges do not consider the finding of tiie jury as fixing Upoq Giles a conversion of .tins sum at any time,, in as much as it does not appear that he was ever demanded to pay. the s'ame into Court, or in any other way. The other two judges are of opinion that, the marshal, being authorized to do certain acts even after his removal from office, the condition of the bond embraces defaults committed after such dismission, as well as before, and that the Defendants are therefore liable for the said.sam of 17,491 dollars and 5’0 cents, although received by Giles afterbe ceased to be marshal.
 

 It is however the opinion of a majority of the Court,, that the Defendants are not so liable under this bontíú .
 

 Another question arises under this apposition of opinion in the Circuit
 
 Court;
 
 and that is whether the payment. to Edward Livingston ip April, 1803, was a payr ment to the United States ?
 

 
 *240
 
 It is supposed tliat this payment, being made contrary to the comptroller’s order of the 17th of December, 1800, which was to pay ail monies received under this execution into the branch bank, at New York, cannot be regarded as valid. .
 

 It is true such instructions are found by the jury, which certainly do not authorize such payment, yet it is.also found, possibly, from some, subsequent instructions of the comptroller, which,do not appear, or at any rate from evidence, which must have satisfied the jury, that such payment was made with the assent and approbation of the comptroller of the treasury. This finding, correct or not, must conclude the Court; and it has only to say whether a payment bé good if made under such authorityv'
 

 The comptroller is authorized by law, “to directprosecutions to be commenced for all debts due to the United States.” During such prosecutions he gives directions how they shall.be conducted, and how the monies recovered shall be paid. If therefore he directed, or assented to, the payment to, Livingston, it is difficult to say that Giles erred, or was guilty of any fault, either in pursuing his instruction, or in making a payment with his assent and approbation.
 

 It yet remains to settle, under this branch of the division of the Circuit Court, how the payment to Livingston is to be applied. For although the sum paid to hint is much greater than the sum of 1,683 dollars and 5Sf cents, for which if is decided that the Defendants aré liable, the benefit, which they may derive from such payment,, will depend in some Pleasure on the manner of its application.
 

 It does not appear that any direction was given by Giles, or that any election was made by either party how it should be applied. Nothing more is known than that Giles,heingthenindebted to a much larger amount for monies received at different. times under the execution against the property of.Lamh, made this payment without declaring what particular item in the account of the United States against him should thereby be discharged! If there be no designation how a sum paid on account
 
 *241
 
 sliálí be credited, ana there be sureties for part of the debt, as was the case here, it seems reasonable to some
 
 of
 
 the judges, to let them have the benefit of it, by appiyingthe credit in such a way as to exonerate them, so far as the sum paid shall be sufficient for that purpose. regard be had to the order of time in w hich the monies were received by Giles, it will be seen that.the sum of 3,763 dollars and 98 cents, which is the first sum for which he is ui arrear, was received by him prior to the 9th of January, 1801; and the next sum for which ho is accountable, to w it: the sum of 1,683. doljars and 52 cents, came into his hands' after that dáy, but previous to thé 27th of March, 1801, and after this, other monies were received by him. These two sums together are not equal to the payment which was made to Livingston.
 

 Following this order,, the. sum for which the Defendants are liable being among the fii.st that were received, and being recoverable with interest on their bond, would on this principle he extinguished by the first payment if it were sufficient, as was the case here, to discharge.all the monies which had been received.prior to' the receipt of the sum, for which the Defendants are answerable, and that also.; 'But, this is not the opinion of a fiiajority of the judg-s. They think, arid such is the decision of the Court, tfiat the United States have y.et a right to apply these payments in a way most beneficial to themselves and so as not
 
 to
 
 extinguish the sum of 1,683 dollars anti 52 cents, for which the Defendants áre’ accountable.
 

 The Court then is of opinión that judgrheht musf be given for the Defendant^ ad to the, sum of 20,613 dollars and 12 cents, being the first sum assessed as conditional, damages upon the-second breach.
 

 Judgment must in like manner be given for the Defendants as to all the other sums assessed as. conditional damages upon the second breach.
 

 It is next to be decided whether the conditional damage's of 5,255 dollars and 73 cents, assessed on the fourth breach be recoverable against the Defendants.
 

 These damages are given in consequence of a suppoi
 
 *242
 
 ed conversion by Giles of the fourteen bonds mentioned in the special verdict.
 
 But it being found that the
 
 sé bonds, were delivered to Edward Livingston, by and with the assent and approbation of the comptroller of the the Court is unanimously of opinion, for reasons already assigned, that such, delivery was no conversion of these bonds by Giles, and that therefore judgment must be rendered for the Defendants, as to the said sum of 5,255 dollars arid 73 cents, being the damages assessed as aforesaid on the fourth breach.
 

 The last question which is submitted to us regards the sum of-309 dollars and 87 cents, which it appears by the finding under the fifth breach assigned, was received by Giles on the first of September, 1800, on an execution-at the suit of the United States, against Richard Capes, which was retained by Giles towards satisfaction of an equal sum due to him. This sum being received prior to the execution of the bond, must be regarded within the reasons assigned for not considering the Defendants liable for the two sums of 50 dollars and of 3,713 dollars and 98 cents, herein before mentioned, and judgment, must, accordingly* in the opinion of a majority of the Court be given for the Defendants, as to the said sum of 309 dollars and 87 cents, being the damages assessed upon the fifth breach.
 

 It will be seen that the Court is of .opinion that the Defendants are liable under their bond for the sum of 1,683 dollars and 52 cents, which was received by ,the marshal after its. execution, and before he went out of office ; but by riot >one of the findings on the different breaches assigned, does it appear to have been contemplated that this sum alrine might be recoverable in this action, and. accordingly rió conditional damages are assessed to suit that state of the case.
 

 ' The Court therefore can only give its directions as to' the questions submitted to them, which are,
 

 That it must be certified to the Circuit Court for the district of New York in the second cjrcuit,
 

 1. That judgment must be given for the Defendants as to the sum 3,763 dollars and 98 cents, being, the da
 
 *243
 
 re ages assessed upon the first breach of the condition of the bond assigned in the replication of the Plaintiffs.
 

 2! That judgment must be given for the Defendants as to' the several sums of 20,613 dollars and cents, of 14,374 dollars and 77 cents, of 9,895 dollars aud 09 cents, of 10,718 dollars and 03 cents, of 16,133 dollars and 44 cents, of 6,238 dollars and 35 cents, and of 4,479 dollars and 68 cents, being the several sums assessed, ás conditional damages on the second breach.
 

 . 3. That judgment must be given for the Defendants, for the sum of 5,255 dollars and 73 cents, being the dar rnages assessed upon the fourth breach, and
 

 4. That judgment piust be given for the Defendants for the sum of 309 dollars arid 87 cents, being the damages assessed upon the fifth breach.