## UNITED STATES v. STANDARD AIRCRAFT CORPORATION.

(District Court, S. D. New York. December 7, 1926.)

United States ☞140—Answer, setting up cross-items and counterclaims against United States, held not defective for failure to aver presentment and rejection by Treasury Department (Comp. St. § 1588).

In action by the United States to set aside an accord between officers of War Department and aircraft corporation, and to recover repayment of various allowances to defendant, answer, setting up cross-items of credit and counterclaims, held not defective, under Rev. St. § 951 (Comp. St. § 1588), for failure to allege that such claims had been presented to officers of Treasury Department and rejected by them.

Action by the United States against the Standard Aircraft Corporation. On motion to strike out a defense and certain counterclaims from defendant's answer, as insufficient on their face. Motion denied.

The suit was to set aside an accord between the parties, and to recover certain overpayments made at the time of its execution. The accord finally settled very voluminous transactions, had under a contract between the parties for the making of aeroplanes during the war. It had been reached after negotiations between the defendant and certain officers of the War Department the finality of whose action the plaintiff now challenges. The bill demanded the repay-

ment of various allowances made by them to the defendant at the time, with which the plaintiff should not have been charged. The answer, among other matters, set up certain cross-items of credit to which the defendant was entitled, and numerous counterclaims on which it demanded an affirmative decree. It did not, however, allege that any of these claims had been presented to the accounting officers of the Treasury and rejected by them, as required by R. S. § 951 (Comp. St. § 1588).

The plaintiff asserted that the omission of this allegation made both the defense and the counterclaims invalid in law, and required their excision. This was the only question considered in the following opinion.

Alexander Holtzoff, of New York City, and Charles R. Pollard, of Washington, D. C., for the United States.

Henry W. Taft and George Coggill, both of New York City, for defendant.

HAND, Circuit Judge (after stating the facts as above). The sole point raised upon this motion is whether the "claims for credit" and the counterclaims in the defendant's answer are demurrable for failure to allege that the credits so set up had been presented to the Treasury officials before the answer was filed. The objection arises from R. S. § 951 (Comp. St. § 1588), and has three times been held good in District Courts (U. S. v. Patterson [C. C.] 91 F. 854; U. S. v. Cantrall [C. C.] 176 F. 949; U. S. v. Kerr [C. C.] 196 F. 503), though each time without any extended discussion of the statute. Except for these cases I can find nothing in the books which passes on the point, though there are dicta that may be thought to throw some light upon it.

Revised Statutes, § 951, is the same statute as section 4 of the Act of March 3, 1797, just as R. S. § 957 (Comp. St. § 1595), is the same as section 3. The original statute in section 1 (1 Stat. 512) provided that, when "any revenue officer, or other person accountable for public money," should fail to pay the "balance reported to be due to the United States, upon the adjustment of his account," the Comptroller should sue him for the balance, and by section 2 the "books and proceedings" of the Treasury were made evidence against him. Section 3 provided that default should be taken against him on the return day, unless he could by affidavit satisfy the court that he was "equitably entitled to credits which had been, previous to the commencement of the suit," submitted to the Treasury and rejected, "and that he can-

not then come safely to trial." If he satisfied the court, he might get a continuance; otherwise, judgment was to go against him forthwith.

These sections clearly have nothing to do with the pleadings, but only with the conditions necessary to prevent summary judgment. They require that the claims shall be presented before the action was commenced, presumably to insure good faith; that is, to prevent raising frivolous claims post litem motam. U. S. v. Hawkins, 10 Pet. 125, 133, 9 L. Ed. 369. The pleadings were left to the course of the common law, which, even before the statute of 2 Geo. II, allowed cross-credits arising out of the transaction sued on. Chitty on Pleading, vol. 1, p. 596. These were allowed under the general issue, either with or without notice of set-off served before trial.

Section 4 is certainly of wider application, though it has been held to apply as well to revenue officers and other persons accountable for public moneys. U. S. v. Giles, 9 Cranch, 212, 3 L. Ed. 708; U. S. v. Wilkins, 6 Wheat. 135, 5 L. Ed. 225; U. S. v. Hawkins, 10 Pet. 125, 9 L. Ed. 369. At any rate, section 3 does not, and is not urged to, govern the case at bar. When section 4 was passed, a defendant had whatever right to prove credits the common law gave him, confined, as I have said, to items arising out of the same transaction, together with such added rights as arose under the statutes of set-off of Geo. II. It is true that those statutes allowed the set-offs authorized under them to be pleaded in bar, as well as by general issue; but it is not necessary here to consider the conditions determining which was the proper course. Had it been intended by section 4 to change the pleadings theretofore proper, the section would have mentioned them. It has been the custom of the United States in actions at law to accept the practice of the states, except as some specific exception is made to them.

The purpose of that section was something altogether different, as may be shown, I believe, by a little examination of its terms. When the credits arose out of the transaction itself, the United States was left exposed without notice to claims made at the trial, which the Treasury had not had any chance to sift. This was a perilous position, and for that reason it was enacted that no such credits "should be admitted upon the trial," unless they had been presented to the Treasury and disallowed. Presentation alone, it must be noted, was not enough; the defendant must present them long enough in

advance of trial to allow the Treasury officials to examine and reject them. This gave the United States more than could be had by merely pleading them; it insured a complete acquaintance before trial, not only with the claims, but with the evidence by which they were to be supported. It would have been absurd to require the defendant also to plead that they had been presented and rejected. First, this would have informed the plaintiff of nothing which by hypothesis the Treasury, its agent, would not know in season; second, it would have needlessly limited the defendant's time to the period before answer, instead of before trial. Finally, it would have introduced into the pleadings allegations which would have entirely varied their accepted form, allegations whose assumed absence was indeed probably the occasion for the very enactment of the section itself.

If this conclusion is thought doubtful, the remainder of the section puts it beyond question. The defendant was not absolutely held to get his claims disallowed before trial; there was a way out. He might prove to the court's satisfaction that he had at the time of trial vouchers not before in his possession, and if, in addition, he proved that he had been unavoidably prevented from presenting his claim and getting it disallowed, his credits might still "be admitted upon the trial." It is plain that this excuse is inconsistent with the notion that his pleading must contain any allegation that the credits had been disallowed. Had that been true, a defendant must still be able to excuse his failure, and obviously he could allege in his answer no more than that up to that time he had been unavoidably prevented from compliance. But his disability so alleged might disappear before trial, and the section required the defendant to show that his disability continued until that time. Plainly it would be absurd to require him to allege an excuse which at that time it was alleged was no excuse at all.

Again, suppose that in his answer he alleged the other element of the excuse; i. e., the fresh possession of vouchers to support the claims. If he had such vouchers at that time, he would have no excuse for failing at least to try to get the claim disallowed before trial. To require this element of the excuse to be pleaded would therefore destroy it as an excuse. Further, it would deprive the defendant of the excuse, in case he got the vouchers after answer filed, because his answer would be bad, and a bad answer will not support good proof. The plaintiff is therefore in this dilemma. If the section requires the defendant to plead the rejection, it must allow him to plead the excuse, for otherwise the excuse is taken away. But to require him to plead the excuse is itself to destroy the excuse, or to deprive the defendant of it, if he cannot plead it. All this shows the impossibility of treating the section as requiring something which must be done before trial.

Ordinarily I should have felt bound to follow the decisions of three District Courts, though they are not authoritative. But since, as I have said, the matter has never been discussed, and since it seems quite clear, not only from the general scope of the statute, but from the very structure of the section in question, that it concerns something entirely outside the pleadings, and something which cannot possibly have been intended to be included in the pleadings, it appears to me that the defendant is entitled to such independent consideration as I can give the question.

I decide nothing as to how far the section in fact applies to the case at bar; that is, whether it affects credits pleaded as counterclaims, or is confined to those of set-off. Again, I say nothing as to whether the officials of the War Department who acted upon these claims were "accounting officers of the Treasury." The defendant must make up its mind as to whether it can safely go to trial in its present posture. All that is presented, as I said at the outset, and all that I decide, or can decide, concerns the sufficiency of the pleadings.

Motion denied.