# The Central School Supply House, for use of Jacob Livingston, Appellant, *v.* The School Board of South Middleton Township.

*Municipal law—Warrants of school board not negotiable—Presumption of assignment from circumstances—Question for jury.*

Orders drawn by the president of a board of school directors on the treasurer of a school district are not negotiable bills or orders but mere warrants for the payment of money to the persons to whom they are issued to be disbursed by the treasurer under authority of law.

A warrant having been assigned, as alleged by use plaintiff, in a suit brought, not on the warrant, but the contract back of it, the equitable plaintiff is entitled to have left to the jury the question whether the legal plaintiff has been paid in full, there being no defense on the merits, and the jury should have been instructed that no formal assignment was necessary because equity presumed that to be done which ought to have been done.

Argued March 17, 1898.    Appeal, No. 48, March T., 1898, by Jacob Livingston, from judgment of C. P. Cumberland Co., on verdict for defendant.    Before RICE, P. J., WICKHAM, BEAVER, REEDER, ORLADY, SMITH and PORTER, JJ.    Reversed.

Assumpsit to recover $456, for maps sold to defendant.    Be-

fore McClure, P. J., of the 17th judicial district, specially presiding.

The facts sufficiently appear in the opinion of the court.

Verdict and judgment for defendant.   Jacob Livingston, use plaintiff, appealed.

*Errors assigned* among others were (3) in charging the jury as follows : " Now, there are two questions of fact for you to determine.   The presumption is that the order or warrant was given just as it appears upon its face.   If I have your promissory note the presumption is that you signed your name to the note as a promise that you will pay the money on the day it falls .due, but if you allege fraud in its execution or delivery you must prove that by clear, precise, and indisputable testimony.   A like burden rests upon the school directors to show to you that this order was not given as an order, or intended for an order on the treasurer, and that it was procured by the fraudulent representations of Mr. Meloy.   You will consider all the testimony and examine the paper itself, and when you decide that question, you will take up the other, whether or not an alteration was made after delivery.   These two questions of fact are for you to decide.   The credibility of the witnesses is for you to pass upon ; you heard them and saw their demeanor while upon the stand.   There is a direct conflict of testimony between Mr. Meloy and the school directors as to how the instrument was written, how it came into his hands, and as to the alteration of it.   You will consider in detail all the facts before you and pass upon their credibility, their interest, if any, in the result of this controversy ;—whether they be interested or disinterested witnesses, and their manner and bearing upon the stand.   All that you must consider in determining these two questions of fact we submit to you, and which you must pass upon.   If there was fraud in obtaining this paper, and if it was fraudulently altered after it was given, we say that the plaintiff cannot recover.   He has no other right to sue than on the paper, if he paid the money for the maps for which the warrant issued, he paid it voluntarily as a third party, without authority from the South Middleton school directors, and without the knowledge of the supply house, and he has no other authority from the Central School Supply House to use their name

to bring the action, so we submit these two questions to you. If there was fraud in obtaining the order, and fraud in its alteration after it was given, then your verdict should be for the defendant; if not, then your verdict should be for the plaintiff for the amount of the claim." (5) In refusing plaintiff's second point, which point is as follows: "2. If the jury believe that the Central School Supply House and A. D. Meloy have received from the use plaintiff payment in full of all their interest in the contract, then their verdict must be for the use plaintiff for the full amount claimed, and no formal assignment of the claim on the contract is necessary because equity presumes that to have been done which ought to have been done." (7) In refusing plaintiff's fifth point, which point is as follows: "5. The school district of South Middleton township, having no defense to the merits of the case, could have obtained full protection by payment of amount of contract into court, where the ownership of the money could be determined, not having done so and having made no defense to the merits of the claim, the verdict of the jury must be for the full amount of the claim."

*R. W. Woods* and *John Hays*, for appellant.—There is no evidence in this case that the contract with the school board of South Middleton township has not been complied with or that the goods contracted for have not been delivered as contracted for, or in any way affecting the value of the goods.

An alteration of a deed, although material, if made by a stranger, will not affect the validity of the instrument.

An immaterial alteration of a deed, although made by a party thereto, will not avoid the same, or make it inadmissible in evidence: Robertson v. Hay, 91 Pa. 242.

Fraud does not consist in mere intention. Fraud consists of conduct that operates prejudicially on the rights of others, and is so intended: Rodman v. Thalheimer, 75 Pa. 232.

Such orders have not the ordinary properties of a contract: Maneval v. Jackson Twp., 141 Pa. 426.

The district obtained the goods for which the order or warrant on its treasurer was drawn. It obtained the full value for it. This was proven on the trial and admitted. A verdict in this case in the name of the legal plaintiff would have satisfied the contract, and protected the defendant even against the second order or warrant if mistakenly issued,

The defense of fraud in this case has therefore nothing substantial to rest upon.

But the court put the case to the jury solely on the question of fraud in obtaining the order and fraud in altering it.

The form of an assignment is immaterial, so that there be a clearly expressed intention of an immediate transfer of the right to the assignee: Ulrich v. Homer, 156 Pa. 414; Moeser v. Schneider, 158 Pa. 412.

An assignment, verbal or formal, was not necessary. The right to the money is·sufficient: Saeger v. Runk, 148 Pa. 77.

The court should therefore have affirmed the plaintiff's second point.

*F. E. Beltzhoover*, with him *W. F. Sadler*, for appellee.—The law is clearly and overwhelmingly settled that fraud when proven cuts down all contracts and dealings among men and that no recovery either at law or in equity can be founded on a transaction tainted and saturated with fraud.

It is settled in this country that school boards are trustees for the administration of a great public charity and all parties are bound to take notice in dealing with them that these trustees of the public can only be bound where in equity and good conscience the public should be compelled to pay. The school board of South Middleton had no relations or business, or dealings, or privity of any kind whatever with Mr. Livingston except through a paper which was obtained from them by the most insidious and disreputable fraud and which was materially altered and forged after it left their hands.

It is difficult to see therefore how the court erred on the merits of the case in leaving these fundamental and controlling questions fairly to the jury where they belonged.

School orders are not negotiable: Bank v. School District, 81* Pa. 307.

Township orders are not negotiable and suits cannot be sustained on them: Snyder v. Bovaird, 122 Pa. 442; Dyer v. Covington, 19 Pa. 200.

The law is equally plain that under this state of facts Mr. Livingston as plaintiff is not entitled to sue the school board for the money he paid for the fraudulent order. The Central School Supply House, with whom the school board dealt have

brought suit on the warrant which they hold and which is untainted with fraud, thereby asserting in the most decisive way that Mr. Livingston does not have their consent to use their name as plaintiff and that they themselves claim the money for the maps.

Where the contract leaves the promisor subject to a suit by the promisee, and likewise to a third person beneficially interested, the latter cannot maintain an action: Guthrie v. Kerr, 85 Pa. 303.

Money voluntarily paid in discharge of a void obligation cannot be recovered back: Speise v. McCoy, 6 W. & S. 485.

OPINION BY ORLADY, J., December 15, 1898:

The Central School Supply House of Chicago, Ill., being the sole owner of copyright and patents for the manufacture, publication and sale of certain politico-relief maps for use in schools, made a contract in writing with one A. D. Meloy by which he was to purchase, and have the exclusive right to sell these products in counties and cities therein mentioned. Pursuant to the right given to him at a regularly convened meeting of the board, when all the members were present, Meloy made a contract with the directors of South Middleton township to sell to them certain maps and cases for the sum of $456, and, as evidence of the contract, a resolution was regularly minuted of the action taken, and, as exhibited in evidence, a paper of the following form was given to Meloy:

"CARLISLE, PA., July 16th, 1896.

"Mr. Adam Baker, Treasurer of South Middleton township School District, County of Cumberland, State of Pennsylvania, pay to the Central School Supply House per A. D. Meloy, or order, four hundred and fifty-six dollars, being payment relief maps, for which this will be your sufficient voucher on settlement of your account, payable January 1st, 1897.

"By order of the Board,

"F. G. MYERS, President.

"Attest: W. F. GARDNER, Secretary."

On July 24, 1897, Meloy sold this paper to Jacob Livingston for $420, and indorsed it as follows: "A. D. Meloy, Central School Supply House, per A. D. Meloy," and the same day

he sent to the supply house his check for $300, and noted thereon, "on account of South Middleton." This check was received by the supply house, by it indorsed, and finally returned to the bank on which it was drawn, and was charged to Meloy's account, and on the trial below it was in evidence as a canceled check.

The maps and cases were shipped by railroad service, and were received at the station by the members of the school board, who had met for the purpose of inspecting them. All of the members were present at this meeting, although they did not convene as a board, nor make a minute of any action then taken, but executed a paper in the following form, viz:

"HATTON, PA., August 7th, 1897.

"Mr. A. S. Baker, Treasurer of South Middleton Township School District, County of Cumberland, State of Pennsylvania, pay to the Central School Supply House, or order, four hundred and fifty-six dollars, being payment for politico-relief maps for which this will be your sufficient voucher on settlement of your account payable January 1st, 1897. 6 per cent. interest after due.

"By order of the Board,

"F. G. MYERS, Pres.

"Attest:                    W. F. GARDNER, Sec."

This paper and a bill which accompanied the goods, in which there was an item of charge for the cases for the maps, were given to the treasurer.

The following day the treasurer called upon Meloy and asked for an explanation of the discrepancy between the amount of the bill rendered by the Supply House and the contract price of the maps. Meloy asserted that the charge for the covers was an error, and to correct it he indorsed on the back of the bill as follows: "Covers were furnished by A. D. Meloy," and then requested the treasurer to give to him the warrant dated August 7, so that he could send it to the Supply House with his explanation of the transaction. He informed the treasurer that, on July 24, 1897, he had sent to the Supply House the sum of $300, which was all that was due on this order, and he exhibited the check stub in support of his statement.

The treasurer refused to deliver the warrant of August 7 to

Meloy, but sent it to the Supply House, who subsequently brought suit upon it against the school district to No. 92, September term, 1897, which action is still pending.

It was admitted that the maps and covers were of the kind and value ordered by the school board, and were in use in the schools of the district, by order of the board, at the time of the trial of this case in the court below.

The defendant contended that the paper dated July 16, 1897, was only an order for the goods, and that it had been fraudulently altered by the insertion of the words "per A. D. Meloy." It is idle to call the paper of July 16, 1897, an order for goods, and the one of August 7, 1897, a warrant for their payment. The first was a warrant in form the same as the second, and, when delivered, rendered the issuance of the second one not only unnecessary but irregular. Meloy might not have had the technical right to formally assign the warrant to Livingston, and yet, the Supply House would be bound by his act if it knowingly received and retained the fruits of the assignment. The corporation could have sold its claim against the district and would have been liable to Meloy only for his proportion of it. The same equitable result is secured if the company knowingly gets out of the fund the full share to which it is entitled, and the use plaintiff contended that this had been done. On the trial, the president of the School Supply House, who had signed the contract with Meloy for his company, was called as a witness for the defendant, and neither he nor the counsel for defendant objected to the use of the Central School Supply House as the legal plaintiff in the suit then on trial, though that objection is raised before us. The legal plaintiff had the right to be heard in regard to the unauthorized use of his name, and to demand immunity from costs, but as no complaint was made in this respect, we must presume that it was satisfied: Saeger v. Runk, 148 Pa. 77. After such silence the question cannot now be raised. It is true that orders drawn by the president of a board of school directors on the treasurer of a school district are not negotiable bills, or orders, but mere warrants for the payment of money to the persons to whom they are issued, to be disbursed by the treasurer under authority of law: Bank v. School District, 81* Pa. 307; Maneval v. Jackson, 141 Pa. 426. But, in this case the statement sets out the

whole transaction and alleges that Meloy sent to the Central School Supply House its portion of the amount. The suit is not on the warrant, but on the contract back of it, and the equitable plaintiff's claim is that Meloy and the Central School Supply House have been paid in full, of any claim they or either may have against this defendant, out of the money paid by him to Meloy, and the court was specially requested to submit this question to the jury in the plaintiff's second point, which was refused by the court. While the authority of Meloy to sell or indorse the paper, of July 24, 1897, to Livingston, was denied by the defendant, the undisputed evidence shows that at the time Livingston bought it from Meloy, it was in the same condition as when offered in evidence, and of the $420 he paid to Meloy, $300 were received by the Supply House. It is not necessary to discuss the conduct of Meloy in the light of his relation to the Supply House, nor of that corporation, in seeking to recover the whole $456 under the second warrant, while they have $300 as proceeds of the first warrant, nor of the liability of the defendant on the apparent duplication of its liability under the warrant of August 7, which was signed by the officers after they knew a similar one for the same indebtedness was then outstanding. The defendant was not called upon to pay more than it had contracted to pay for the goods, it accepted and had used them, and could have fully protected the school district by paying the money into court, where the parties claiming the fund could assert their right to it. The use plaintiff was entitled to have the jury say, under the evidence, whether the money furnished by him to Meloy had been applied as suggested in his second point. The fifth assignment of error is sustained. The learned trial judge instructed the jury, viz: "If there was fraud in obtaining the order and fraud in its alteration after it was given, then your verdict should be for the defendant; if not, then your verdict should be for the plaintiff for the amount of the claim."

There was no evidence in the case which imputed fraud to Livingston. The alleged act of Meloy in inserting "per A. D. Meloy," did not injuriously affect the defendant. The amount of indebtedness was not increased, nor date of payment changed as the Supply House asserted that in the suit brought by it

each was correct. The defendant's sole risk was created by its attempt to adjust the accounts between Meloy and the Supply House. And whether the insertion of "per A. D. Meloy" in the warrant of July 16, 1897, was a fraud or not, by which the defendant would be relieved from paying the amount it promised to pay for the maps, would depend largely on facts which are not shown by this record.

The judgment is reversed, the costs to be paid by appellee, and a venire facias de novo awarded.