# Livingston *v.* School Board.

*Appeals—Effect of a venire facias de novo.*

A trial de novo does not mean a trial on appeal with nothing but the record to correct errors, but is a trial on the entire case anew.

The appellate court adjudicates on what is before it, and sometimes remands with instructions, but it does not undertake to mold the pleadings preparatory to trial below.

*Municipal law—Warrants of school board not negotiable—Question for jury.*

Orders drawn by the president of a board of school directors on the treasurer of a school district are not negotiable bills or orders, but mere warrants for the payment of money to the persons to whom they are issued to be disbursed by the treasurer under authority of law.

A warrant having been assigned, as alleged by the use plaintiff, in a suit brought not on the warrant, but the contract back of it, the appellate court will not disturb the judgment of the court below where, despite some irregularities in the record, the case was tried and fairly left to the jury on the issue made by the parties as embodied in points which were the converse of each other, both of which were affirmed and which left to the determination of the jury the crucial question, whether or not, under all the evidence in the case, the legal plaintiff had received all the money due it from the use plaintiff on the warrant which was the subject of suit and of which the use plaintiff was the assignee.

Argued March 14, 1900.   Appeal, No. 12, March T., 1900, by Jacob Livingston, in suit of Central School Supply House, for use of Jacob Livingston against the School Board of the Township of South Middleton, from judgment of C. P. Cumberland Co., on verdict for defendant.   Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Affirmed.   Opinion by ORLADY, J.

Assumpsit to recover $456 for maps sold to defendant.   Before BIDDLE, P. J.

The facts sufficiently appear in the opinion of the Superior Court on appeal from a former trial of this case as reported in 9 Pa. Superior Ct. 110.

After the return of the record to the court below, the defendant filed a supplemental affidavit of defense in which it was alleged, first, that the order sued on was fraudulently ob-

tained, second, that it had been altered in a material part to the prejudice of the defendant, and third, that the maps and cases delivered had not the value claimed.

[At the second trial of the case the trial judge admitted testimony of defendants in accordance with the offer of defendant's counsel, over objection made by counsel for plaintiff, which offer and objection are as follows:

Mr. Beltzhoover: It is proposed to prove by the witness on the stand and others who will follow him, and by papers and documentary evidence in the case, that on July 16, 1896, the school board of South Middleton township made a written contract with the Central School Supply House, of Chicago, through A. D. Meloy, who purported to be their agent, for the purchase of relief maps; that after the contract for the purchase of said maps had been signed in duplicate and one copy given to Mr. Meloy and the other retained by the board, Mr. Meloy stated to them that it was necessary for him to have an order for the goods sold to induce the house to ship the goods; that he then presented a paper, upon which the present action is alleged to be founded, marked R. B. "A," and stated that this was an order for the goods, and upon that assurance the officers of the board signed the paper; that the paper so signed did not have the words "per A. D. Meloy" in the body of the paper; that this paper was not asked for, nor given as any evidence of payment, or of contract, or of liability, but simply as stated, as an order for the goods; that a draft could not have been given as an evidence of debt or payment, because nothing had been done under the contract and would not be until the maps were delivered and approved; that on August 7, 1896, following, the goods were received by the board with a bill for $760, the contract having called for the payment of only $456; that one of the officials of the board saw Mr. Meloy and asked him how it came that the cases were charged $304, telling Mr. Meloy that they had received the goods and were about to send a warrant for their payment, to wit: for the amount agreed upon, $456; that Mr. Meloy then wrote across the back of the bill then rendered, a statement that the cases were not to be charged, and also stated that he had sent his check to the Central School Supply House in payment of the cases, and showed him the stub of his check; that the bill rendered, as all the pa-

pers in the negotiation show, stated that no payment was to be
made to any one but the Central School Supply House, and the
official of the board who saw Mr. Meloy about this bill stated to
him that they were now about to send their warrant for $456 to
the Central School Supply House; that Mr. Meloy made no pro-
test nor objection; that on July 24, 1896, Mr. Meloy wrote to the
Central School Supply House stating that he would send them
the order for $456 of the South Middleton township school board
for the maps which had been ordered, and enclosed his check for
$300 for the cases which were included; that subsequently, on
August 7, 1896, the school board sent their school warrant to
the Central School Supply House for $456 in payment of these
relief maps; that this warrant was subsequently sued upon by
the Central School Supply House, and the action on it against
the school board of South Middleton township is now pending;
that some time later in the fall the school board were informed
that Mr. Livingston had their warrant for $456; that the Cen-
tral School Supply House never received from Mr. Meloy, nor
from any one else, the amount due them on this contract.

  This for the purpose of showing that the alleged warrant in
suit was not issued by the school board as warrant, but was
surreptitiously obtained by Mr. Meloy, and was transferred
without authority, and by the perpetration of forgery; that
the money was not appropriated to the payment of the relief
maps, but in payment of his own debt with the Central School
Supply House for cases, and that Mr. Livingston, the use plain-
tiff, has no right to recover in this action.

  It is also proposed to show that the warrant was materially
altered by the interlineation of the words "per A. D. Meloy"
after it had been written, in order to allow Mr. Meloy to per-
petrate the fraud by the negotiation of the warrant, which he
did negotiate, and which fraud he did in fact perpetrate.

  Mr. Hays : Objected to (1) that the evidence offered has all
been passed upon by the Superior Court in its opinion, and has
been decided by that court to the effect that it will not amount
to a defense.   (2) It is not competent for the defendant in this
case to try any matters that may be in dispute between Mr. Me-
loy and the Central School Supply House.   (3) The evidence
proposed to be given by the witnesses cannot be given to alter,
vary or modify the terms of the written paper in evidence.

(4) No such defense is raised by the affidavit of defense and pleadings, and under the rule of court where the facts in the declaration are not denied by the affidavit of defense, the facts as stated in the declaration may be taken as admitted. (5) The evidence is incompetent, irrelevant and inadmissible for any purpose in this case.

The Court: The proposed evidence will be admitted and its legal effects in relation to the questions at issue in this case will be disposed of later. The objections are overruled and an exception noted for the plaintiff.] [1]

Plaintiff submitted among others the following points:

3. If the jury believe that the Central School Supply House and A. D. Meloy have received from the use plaintiff payment in full of all their interest in the contract, then their verdict must be for the use plaintiff for the full amount claimed, and no formal assignment of the claim on the contract is necessary, because equity presumes that to have been done which ought to have been done. *Answer:* This point is affirmed.

[5. Under all the evidence and the law in the case, the verdict of the jury should be for the plaintiff for the full amount of the claim. *Answer:* This point is refused.] [11]

Defendant submitted, inter alia, the following point:

[1. If the jury are not satisfied under all the evidence in the case that the Central School Supply House has received all the money due it on its sale of maps and cases to the South Middleton School District, but that there is money still due said school supply house, then the plaintiff is not entitled to recover. *Answer:* This point is affirmed.] [5]

Verdict and judgment for defendant. Plaintiff appealed.

*Errors assigned* among others were (1) to rulings on evidence, reciting offer, objection and evidence thereto and rulings thereon. (5) In affirming defendant's first point, reciting point and answer. (11) In refusing to affirm plaintiff's fifth point, reciting point and answer.

*John Hays* and *R. W. Woods*, for appellant.—The opinion of this court when this case was first before it and reported in 9 Pa. Superior Ct. 110, settled all the legal questions involved. They are:

1. The right to use the name of the legal plaintiff cannot be inquired into.

2. The suit is on the contract and not on the warrant.

3. The goods delivered are in use and are of the kind and value ordered.

4. There is no fraud in the case.

5. The issue of the second warrant was irregular.

6. The defendant could have protected itself by paying the money into court.

*E. M. Biddle, Jr.*, and *F. E. Beltzhoover*, with them *W. F. Sadler*, for appellee.—The fatal weakness of appellant's argument is his contention that there could be, and has been no change in the pleadings, issues and evidence since the first trial of the case. This contention is in direct contradiction of the authorities and the facts. The judgment entered on the first verdict was reversed, and the case remanded for a new trial, without instructions from the court. The effect of this was to reopen the entire case, enabling defendant to avail itself of any defense it might have, irrespective of its having been used in the former trial or not.

An order granting a new trial leaves the case as though no trial had been had : 16 Am. & Eng. Ency. Law (1st ed.), 674.

In the absence of any showing to the contrary, a new trial will be presumed to have been awarded on the merits, reopening the whole case : 16 Am. & Eng. Ency. of Law (1st ed.), 675; Morris v. State, 1 Blackford, 37.

The same rule applies to a case sent back from a new trial upon a reversal on appeal : Ex parte Bradford, 48 Ind. 548.

The judgment of this court (Supreme) did not divert any right the parties might otherwise possess after the case was remanded. Nor could the defendants alter their pleadings here. Such is not the practice. This court adjudicates on what is before it, and sometimes remands with instructions, but does not undertake to mould the pleadings preparatory to a trial below : Kemmerer v. Young, 5 Rawle, 175.

If Meloy had any right to transfer the contract to Livingston it was an equitable right and was dependent on the school supply house's having received payment of its interest in the contract. So long as any part thereof remained unpaid no sub-

stitution could take place against the protest of the supply house.

The rule governing this question is fully set out in the opinion of Justice MITCHELL in Graff, Bennett & Co.'s Estate, 139 Pa. 69.

The defendant, too, is entitled to demand that a claim against it shall be sued upon for the whole amount only, and not for fractions thereof, thus exposing it to additional costs and expense: Dietrich's App., 107 Pa. 174; Hopkins v. Stockdale, 117 Pa. 365.

Appellant apparently recognized said rule, for at both trials he presented his third point.

The appellant now insists that the question should have been decided by the court as question of law and not of fact, in spite of, or rather, because of the adverse finding of the jury.

The reasons given in support of this change of front will not stand investigation, being based on misstatements of fact and law.

OPINION BY ORLADY, J., November 19, 1900:

When this case was before this court in a former appeal the essential facts were set out at length: 9 Pa. Superior Ct. 110. The judgment of the court below was then reversed and a venire facias de novo awarded, and it is not necessary to repeat the reasons for so deciding, but the record submitted on this appeal presents questions not raised on the former one. When a judgment is reversed by our appellate courts and a venire facias de novo is refused, the judgment of reversal does not constitute a bar to another suit for the same cause of action: Fries v. Penna. R. Co., 98 Pa. 142; Wrasse v. Traction Co., 146 Pa. 417; Ellis v. Ins. Co., 9 Pa. Superior Ct. 392. The award of a venire de novo is in no instance anything more than an order for a new trial in a cause in which the verdict or judgment is erroneous in matters of law: United States v. Hawkins, 35 U. S. 125; Co-op. ed. 369. A trial de novo does not mean a trial on appeal with nothing but the record to correct errors, but is a trial on the entire case anew: Shultz v. Lempert, 55 Tex. 273. In Kemmerer v. Young, 5 R. 175, our Supreme Court says: "The judgment of this court did not divest any right the parties might otherwise possess after the

cause was remanded. No decision took place here on the right of the defendants to add a new plea. Under the circumstances the defendants retained the right given them by the act of assembly to add a new plea before the trial of that issue." This court adjudicates on what is before it, and sometimes remands with instructions, but it does not undertake to mould the pleadings preparatory to a trial below. After a venire facias de novo the case stands in the court below subject to the provisions of the act of assembly (March 21, 1806, 4 Sm. L. 326, sec. 6), and as in other cases the defendant may alter his defense or plea on or before the trial.

After the return of the record to the court below the defendant filed a supplemental affidavit of defense in which it was alleged, first, that the order sued on was fraudulently obtained, second, that it had been altered in a material part to the prejudice of the defendant, and third, that the maps and cases delivered had not the value claimed.

The defense as presented at the last trial eliminates from the case the right or duty of the defendant to pay the money into court, as its denial of liability affected the whole claim, as well as the plaintiff's right to recover any part of it. The theory of the use plaintiff was that the Central School Supply House had been paid in full, in support of which he adduced evidence, and, the court affirming his third point, the solution of that fact was distinctly transferred to the jury, which tribunal determined it against him. The point was as follows: "If the jury believe that the Central School Supply House and A. D. Meloy have received from the use plaintiff payment in full of all their interest in the contract, then their verdict must be for the use plaintiff for the full amount claimed, and no formal assignment of the claim on the contract is necessary, because equity presumes that to have been done which ought to have been done." The converse of this proposition was presented by the defendant's first point viz, : " If the jury are not satisfied under all the evidence in the case that the Central School Supply House has received all the money due it on the sale of he maps and cases to the South Middleton school district, but that there is money still due said Central School Supply House, then the plaintiff is not entitled to recover; " which was also affirmed. From the plaintiff's presentation of the case, the state of the account of

A. D. Meloy with the supply house, as to this particular transaction, was necessarily a material fact. On no other condition could the use plaintiff claim that he was entitled to use the name of legal plaintiff on the indorsement of Meloy. In the plaintiff's examination of Meloy is the following:

"Q. Mr. Meloy, the contract is in evidence between you and the Central School Supply House. How many sets of maps did you buy from them? A. Two hundred sets. Q. What was in a set? A. Seven maps to a set. Q. Cases furnished with them? A. Cases furnished with each set of maps. Q. You paid how much? A. I was to pay, I had already paid for them by issuing my notes. I was, however, required upon each sale to remit to them one half of the sum received as a credit on my notes, and if they got the money I drew my half, and the other one half should go as a credit on my notes. The goods had already been purchased, and they held my notes as collateral. . . . I made the check straight $300 in order that they might get the benefit of that much either way, and that $300 which I sent to them paid every equity they had in the cases, and the maps which were shipped to the South Middleton School Board, it being credited on my notes, and entirely wiped out the transaction so far as the Central School Supply House was concerned." On the part of the defendant, in reference to the maps and cases that were shipped on Meloy's order to the school district, the president of the supply house testified as follows: "Q. Have you been paid for them? A. No, sir, not one cent; we have never received a cent yet." In regard to the second warrant issued by the school district, as follows: "Q. Has ever a dollar been paid on it? A. We have never received a cent. Q. From anybody? A. No, sir." As an admission of facts on the part of the defendant, and in order to relieve the use plaintiff of the necessity of proving them, he adopted, in making out his case in chief, the unusual method of using a statement from the opinion of this court in the former appeal, which was without precedent or authority to justify it, and should have been rejected as irrelevant to the issue then before the court. The case was tried throughout on the lines suggested by the plaintiff's third and the defendant's first point, and while there are some irregularities in the record, they are not of sufficient importance to warrant a third trial of this case.

The judgment is affirmed.